CBS OUTDOOR, INC.,

    Plaintiff,

v.                                      Case No. 1:09-CV-1016

CITY OF KENTWOOD,                  HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION

Plaintiff, CBS Outdoor, Inc. ("CBS"), filed suit against the City of Kentwood (the "City"), after the City's Planning Commission voted to deny CBS's Special Land Use and Site Plan Application to erect and maintain a "dynamic display" billboard located in the C-4 Office Zone adjacent to I-96. CBS filed its complaint in the Kent County Circuit Court, alleging the following three claims: (1) claim of appeal pursuant to M.C.L. §§ 125.3606 and 125.3607 (Count I); (2) deprivation of civil rights under color of state law (First and Fourteenth Amendments) resulting from of denial of CBS's application (Count II); and (3) deprivation of civil rights under color of law (First and Fourteenth Amendments) based upon an unconstitutional prior restraint (Count III). The City removed the case to this Court, alleging federal question jurisdiction as the basis for removal.

CBS and the City have filed cross motions for summary judgment. CBS argues in its motion that it is entitled to partial summary judgment on Counts II and III of its complaint. The City also seeks summary judgment on Counts II and III, but in addition argues that CBS's claims alleged in those counts are not ripe. For the reasons set forth below, the Court concludes that: (1) CBS's First Amendment claims are ripe; (2) CBS is not entitled to summary judgment on Count II, while the

City is entitled to summary judgment in part on Count II; and (3) CBS is entitled to summary judgment on its prior restraint claim in Count III.

## I. BACKGROUND

CBS is engaged in the business of erecting and maintaining outdoor advertising on structures commonly known as billboards. CBS's billboards are located on real property that it either owns or leases. CBS earns income by charging advertisers a fee to display their messages on CBS's billboards. Currently, and at all times relevant to this case, CBS maintains four static or traditional-type nonconforming billboards within the City on industrially-zoned property.

The City regulates billboards and other signs in various chapters of its Zoning Ordinance. Chapter 16, the Sign Ordinance, specifically applies to billboards and signs. Section 16.01 of the Sign Ordinance sets forth its general purpose of "regulat[ing] the use, construction, reconstruction, placement and design of signs in order to protect the public health, safety, peace and general welfare" of the community. City of Kentwood Zoning Ordinance ("Ordinance") ch. 16, § 16.01.A.[1] The Sign Ordinance seeks to "balanc[e] the individual user's desire to attract attention with the public's right to be free of unreasonable distractions [by imposing] . . . reasonable limitations . . . with respect to the placement, construction, size, and design of signs . . . ." *Id.* ch. 16, § 16.01.B. The City deems such regulations necessary to its goals of "[m]inimiz[ing] the risk of damage and injuries from signs that are dilapidated, wind blown, electric show hazards, etc.," "[e]nhanc[ing] the aesthetics of the community," "[p]revent[ing] blight," and "[o]therwise protect[ing] the health, safety, peace and general welfare." *Id.* ch. 16, § 16.01.C.

---

[1] Although the parties did not submit the pertinent portions of the Zoning Ordinance, the City does not dispute the accuracy of CBS's citations to the Zoning Ordinance and quotations of those provisions in its complaint and briefs. The full text of the Zoning Ordinance is available at http://library.municode.com/HTML/13498/level2/P2_AA.html (last visited Sept. 30, 2010).

2

Chapters 13 and 15 of the Zoning Ordinance also apply to billboards. Chapter 13 contains the general application and review procedures for zoning approvals. Section 13.04 requires the City's Planning Commission to review and approve special land use applications. The general criteria for all zoning decisions are set forth in § 13.08 and include: (1) "[w]hether or not the request reasonably preserves the health, safety, and welfare of the public, and is in harmony with the general purpose and intent of this ordinance"; (2) "[w]hether or not the request may have a substantial and permanent adverse effect on neighboring property"; (3) "[w]hether or not the request may have a tendency to create any type of blight within the immediate area"; and (4) "[w]hether or not the request is generally aesthetically compatible with its surroundings." *Id.* ch. 13, § 13.08.A, E, F, and G.

Chapter 15 contains the general approval standards and specific use requirements for the various types of special land uses. Section 15.02 sets forth the general approval standards, which require, in part, that the proposed special use: (1) "[b]e designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance, with the existing or intended character of the general vicinity and . . . will not change the essential character of the area in which it is proposed"; (2) "[b]e compatible and in accordance with the goals, objectives and policies of the master plan and promote the intent and purpose of the zoning district in which it is proposed to locate"; and (3) "[b]e subject to stipulations by the Planning Commission of additional conditions and safeguards deemed necessary for the general welfare, for the protection of individual property rights, and for insuring that the intent and objectives of this ordinance will be observed." *Id.* ch. 15, § 15.02.A, E, and F. The standards specifically applicable to billboards, which are set forth in § 15.04.I, require, among other things, that "[t]he construction or maintenance of a billboard may not act as a detriment to adjoining property, act as an undue distraction to traffic on nearby streets, or

3

detract from the aesthetics of the surrounding area." *Id.* ch. 15, § 15.05.I.6.

In the summer of 2008, CBS approached the City with a proposal to amend the Zoning Ordinance to allow LED digital billboards, or "dynamic display" billboards, within the City. Following several months of discussions and review of the issues and concerns relating to dynamic display billboards, the City adopted Ordinance No. 3-09, which amended various sections of the Zoning Ordinance to allow for the erection of dynamic display billboards in the C-4 zoning district adjacent to I-96. In particular, the amendment to § 15.04.I.8 provides:

> To facilitate the elimination of nonconforming signs, dynamic display billboards are permitted subject to special land use approval in the C-4 zone district adjacent to I-96 if the applicant removes not less than four existing nonconforming billboards in the City under the control of the applicant or an affiliated entity.

Ordinance No. 3-09 § 2.I.8. It is undisputed that this amendment referred specially to CBS, as CBS is the only entity that owns four nonconforming billboards in the City.

On June 16, 2009, following the adoption of Ordinance No. 3-09, CBS submitted its special land use and site plan review application for its dynamic display billboard to the City. After a series of public hearings, the Planning Commission denied CBS's application in written findings of fact dated September 22, 2009. The Planning Commission identified seven grounds for the denial, including that the proposed billboard: (1) failed to comply with § 13.08.G because it was not generally aesthetically compatible with the surroundings; (2) failed to comply with § 15.02.A because it would not be harmonious or appropriate in appearance with the existing character of the general vicinity and would change the essential character of the area; and (3) failed to comply with §15.04.I.6 because it would be a detriment to the adjoining property and would detract from the aesthetics of the surrounding property. (9/22/09 Findings of Fact, Def.'s Br. Supp. Mot. Summ. J. Ex. U.)

4

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

### A. Ripeness

The City contends that it is entitled to summary judgment on CBS's First Amendment claims alleged in Counts II and III because its claims are not ripe. In particular, the City notes that pursuant to Michigan law, M.C.L. §§ 125.3606 and 125.3607, CBS has a right to appeal the Planning Commission's decision denying a special use permit to circuit court. The City contends that because Plaintiff has not sought relief in state court, there is no final determination and the case is not ripe.

"The ripeness doctrine . . . is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction and serves to avoid[] . . . premature adjudication of legal questions, thus prevent[ing] courts from entangling themselves in abstract debates that may turn out differently in different settings." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 342 (6th Cir. 2009) (internal quotations omitted) (alterations in original). The Sixth Circuit considers three factors in evaluating ripeness:

5

> First, we examine the likelihood that the harm alleged by [the] plaintiffs will ever come to pass. Second, we consider whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims. Finally, we must assess the hardship to the parties if judicial relief is denied at [this] stage in the proceedings.

*Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995) (quotation marks and citations omitted) (alterations in original).

As support for its argument, the City cites *Grace Community Church v. Lenox Township*, 544 F.3d 609 (6th Cir. 2008), in which the Sixth Circuit affirmed the district court's dismissal of the plaintiff's claims for lack of ripeness. The plaintiff in *Grace Community Church* obtained a special use permit from the defendant township's planning commission for the operation of a worship and residential counseling ministry center. The permit was conditioned upon the facility not being used as a halfway house or to provide alcohol or drug rehabilitation. Subsequently, the planning commission revoked the special use permit based upon information it received indicating that the plaintiff was providing substance abuse counseling. Rather than seeking reconsideration from the planning commission or appealing to the zoning board of appeals, the plaintiff took no action for almost one year and then filed a lawsuit in federal court alleging claims for violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Religious Freedom Restoration Act, denial of equal protection, an unconstitutional taking, and tortious interference with economic advantage. *Id.* at 612. The Sixth Circuit found persuasive the Second Circuit's decision in *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (3d Cir. 2005), which held under similar circumstances that the plaintiffs' failure to appeal a cease and desist order to a zoning board of appeals rendered the plaintiffs' claims unripe because the government had not rendered a final decision. *Id.* at 613-14. The *Murphy* court identified several benefits arising from a final decision by the local governmental body in land use cases asserting constitutional violations:

6

> (1) "requiring a claimant to obtain a final decision from a local land use authority aides in the development of a full record"; (2) "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel"; (3) " a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes"; (4) that "requiring a meaningful variance application as a prerequisite to federal court litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible"; and (5) that "federal principles also buttress the finality requirement."

*Id.* at 614 (quoting the district court's analysis of *Murphy*). The Sixth Circuit further observed that a prior unreported Sixth Circuit decision, *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609 (6th Cir. 2008), cited *Murphy* in stressing the importance of finality in land use decisions.

The City's assertion that *Grace Community Church* controls in this case fails for two reasons. First, CBS asserts a specific First Amendment claim in this case that was raised neither in *Grace Community Church* nor in *Insomnia, Inc.* That is, CBS alleges that the City's requirement of a special use permit is a licensing scheme that constitutes a prior restraint upon protected speech. Both the Supreme Court and the Sixth Circuit have long recognized that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755, 108 S. Ct. 2138, 2143 (1988); *see also Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151, 89 S. Ct. 935, 939 (1969) ("The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands." (internal quotations and citation omitted)); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 436 (6th Cir. 2005) ("It is well established that a plaintiff has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not he has applied for a license."); *Currence v. City of*

7

*Cincinnati*, 28 F. App'x 438, 441 (6th Cir. 2002) ("Ripeness analysis is relaxed for First Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity."). Contrary the City's assertion in its briefs, *Grace Community Church* did not involve a First Amendment challenge. Although *Insomnia, Inc.* did involve a First Amendment claim, the claim was a First Amendment retaliation claim rather than a facial challenge to an allegedly unconstitutional licensing scheme. Thus, CBS's facial challenge in Count III is ripe.

Second, the circumstances here differ significantly from those in *Grace Community Church*. In this case, CBS obtained a final decision from the Planning Commission only after multiple meetings over several months involving discussion and exploration of the issues presented by CBS' request. Thus, the Planning Commission made a fully-informed decision in denying CBS's request. In contrast, the plaintiff in *Grace Community Church* failed to make a factual record and failed to adequately explain its position to the planning commission. Morever, the Sixth Circuit's concern in *Grace Community Church* was that a final decision by the local land use authority is essential to ripeness. The Planning Commission has made a final decision in this case. In other words, the City argues lack of ripeness not because the local governmental body has not reached a final decision, but because CBS has not obtained review of the adverse zoning decision from the state court – a claim that the City removed to this Court along with CBS's First Amendment claims. Because the claim in Count II would be suitable for judicial review in state court, it is likewise ripe before this Court.

**B.     Count II**

CBS's claim in Count II, as the Court understands it, is two-pronged. First, CBS asserts that it met all of the objective requirements under the Zoning Ordinance for its dynamic display billboard and, therefore, the City should have approved its billboard. CBS contends that the City's denial thus

8

violated CBS' First Amendment rights by restricting and limiting CBS' ability to engage in protected speech. Second, CBS maintains that the City's special use requirement for billboards is unconstitutional because it does not advance a substantial governmental interest.

Regarding the first part of its claim, CBS cites a prior decision from this district which held that a local township violated the plaintiff's First Amendment rights by denying the plaintiff a permit for an off-premises billboard based upon an improper interpretation of the zoning ordinance. In *Gannett Outdoor Co. of Michigan v. Feist*, No. G89-472, 1990 U.S. Dist. LEXIS 2423 (W.D. Mich. Feb. 26, 1990), *vacated on other grounds*, 1990 U.S. Dist. LEXIS 10230 (W.D. Mich. Aug. 1, 1990), the plaintiff applied for a permit to erect an off-site billboard. The defendant township denied the application on the ground that off-site signs were classified as a principal use under the zoning ordinance and there was an existing principal use on the property on which the plaintiff sought to erect the billboard. After examining the pertinent portions of the zoning ordinance, Judge Enslen held that the township's classification of off-site signs as a principal use was contrary to the language of the zoning ordinance, which established off-site signs as accessory uses. Judge Enslen concluded that the township violated the plaintiff's First Amendment rights based upon an improper interpretation of the zoning ordinance. 1990 U.S. Dist. LEXIS 2423, at *20-21. *See also Lamar Adver. Co. v. Twp. of Elmira*, 328 F. Supp. 2d 725, 734 (E.D. Mich. 2004) (concluding that because the law in effect at the time the plaintiff filed its application did not precluded erection of a billboard at the requested location, "the Township deprived [the plaintiff] of its First Amendment rights . . . based on an improper interpretation of the zoning ordinance").

CBS argues that this Court should follow *Gannett Outdoor Co.* CBS says that its application met all of the objective requirements of the City's Zoning Ordinance, such that the Planning Commission's denial of the permit violated CBS's First Amendment rights. While CBS may be

9

correct that it was entitled have its application approved, it has not shown that it is entitled to summary judgment because it failed to submit admissible evidence establishing that its billboard met the objective requirements of the Zoning Ordinance. CBS simply proclaims that its proposed billboard met all of the objective requirements without pointing to any evidence in the record to show that it *in fact* met such requirements.

At the same time, the City is not entitled to summary judgment on this aspect of Count II because it has not shown that CBS failed to meet the objective requirements of the Zoning Ordinance for dynamic display billboards. To clarify, the Court interprets this portion of CBS's claim in conjunction with Count III, which alleges that the special use permit requirement is an unconstitutional licensing scheme because it grants the City's decisionmakers unbridled discretion which may be used to deny a permit based on the content of the speech. CBS asserts that if its claim in Count III is meritorious, then any subjective or discretion-based standards that may be used to deny a special use permit must be struck down, leaving only the objective criteria for dynamic display billboards. In this regard, the City's reliance on *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746 (1989), is misplaced. While the Supreme Court did acknowledge in *Ward* that the First Amendment does not prohibit all discretion in applying time, place, or manner regulations, it took care to distinguish the sound-amplification guideline at issue, which did not "deny the right to speak altogether," *id.* at 794, 109 S. Ct. at 2755, from unconstitutional licensing schemes which give governmental officials unbridled discretion to deny protected speech altogether. *Id.* at 793-94, 109 S. Ct. at 2755. Because the City has not shown that CBS failed to satisfy the objective standards or any valid subjective billboard requirements, its motion will be denied on this aspect of Count II.

CBS's alternative argument in Count II is that the City's requirement of a special use permit for billboards is unconstitutional because it does not advance a substantial governmental interest.

CBS argues that the special use requirement cannot satisfy even the less-stringent test for restrictions on commercial speech under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S. Ct. 2343 (1980). This argument assumes, however, that the billboard portions of the Zoning Ordinance regulate commercial speech. The assumption fails because the special use provisions of the Zoning Ordinance are content neutral time, place, and manner regulations. "Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791, 109 S. Ct. at 2754 (internal quotation marks omitted). An ordinance is content neutral if it does not regulate speech, if it was adopted without reference to a specific message or viewpoint, or if it serves to advance the government's interests unrelated to expressive conduct. *Hill v. Colorado*, 530 U.S. 703, 719-20, 120 S. Ct. 2480, 2491 (2000). Because the Zoning Ordinance is a time, place, and manner regulation, it need only meet the following: (1) it "must not be based on the content of the message,"; (2) it "must be narrowly tailored to serve a significant governmental interest,"; and (3) it "must leave open ample alternatives for communication." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 n.3, 122 S. Ct. 775, 780 n.3 (2002) (internal quotations omitted).

The special use permit aspect of the Zoning Ordinance fulfills the requirements for a permissible time, place, and manner regulation. First, as indicated above, the special use permit requirement for billboards is not based upon the content of the message. Rather, it regulates the location and physical characteristics of signs and their compatibility with existing structures and facilities. Moreover, CBS does not contend that the Zoning Ordinance is content-based. Second, the special use permit requirement is both narrowly tailored and serves significant interests of the City. For example, § 16.01 of the Sign Ordinance states that its purposes include "protect[ing] the public health, safety, peace, and general welfare" of the community. Ordinance ch. 16, § 16.01.A.

Moreover, the City's interests include minimizing pedestrian and driver confusion, distraction, injuries, and deaths resulting from signs and enhancing the aesthetics of the community. These are both legitimate and substantial governmental interests. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08, 101 S. Ct. 2882, 2892 (1981). The special use permit requirement advances these interests by establishing review standards that directly relate to the City's interests and purposes in regulating signs and billboards. For example, general approval standards set forth in § 13.08 require the Planning Commission to consider "[w]hether or not the request reasonably preserves the health, safety, and welfare of the public," "[w]hether or not the request may have a substantial and permanent adverse effect on neighboring property," and "[w]hether or not the request is generally aesthetically compatible with its surroundings." *Id.* ch. 13, § 13.08.A, E, and G. Similarly, the specific requirements for billboards set forth in § 15.04.I.6 provide that "[t]he construction and maintenance of a billboard may not act as a detriment to adjoining property, act as an undue distraction to traffic on nearby streets, or detract from the aesthetics of the surrounding area." *Id.* ch. 15, § 15.04.I.6. These requirements for issuance of a special use permit for a billboard are directly related to the substantial governmental interests identified above. Finally, ample alternative channels of communication are left open, as CBS still has four traditional-type billboards. Accordingly, the City is entitled to summary judgment on this aspect of Count II.

    **C.**    **Count III**

CBS alleges in Count III that certain portions of the Zoning Ordinance relating to special use permits are unconstitutional because they lack definite and objective standards required of a licensing statute or regulation such as the Zoning Ordinance. The Supreme Court has long held that "a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publ'g*

12

*Co.*, 486 U.S. 750, 757, 108 S. Ct. 2138, 2144 (1988). This principal applies to both content-based regulations and content-neutral time, place, and manner regulations. *Thomas*, 534 U.S. at 323, 122 S. Ct. at 780 ("We have thus required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review."). When a licensing statute contains criteria without limiting standards, it creates the potential for censorship. "The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion, by the licensing authority, the danger of censorship and abridgement of our precious First Amendment freedoms is too great." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131, 112 S. Ct. 2395, 2401-02 (1992) (internal quotations omitted). The Supreme Court has also recognized that a lack of objective standards creates the potential for self-censorship, even in the absence of censorship by the reviewing official. "[T]he mere existence of the licensor's unfettered discretion, coupled with the power or prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood*, 486 U.S. at 757, 108 S. Ct. at 2144.

Numerous courts, including the Sixth Circuit, have applied the prior restraint doctrine to sign and billboard licensing schemes as well as other types of zoning ordinances. For example, in *H.D.V-Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009), the Sixth Circuit considered a First Amendment challenge to Detroit's zoning and sign ordinances by an adult cabaret. Analyzing the sign ordinances under the *Thomas* framework for evaluating the validity of time, place, an manner ordinances, the court first considered whether the ordinances "contain[ed] narrow, objective, and definite nondiscretionary criteria." *Id.* at 623. The court concluded that the criteria were sufficiently objective to curtail any unrestricted discretion in the decision-maker because they included only "limitations on size, height, location, area, and setback conditions." *Id.* Similarly,

13

in *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007), the court applied a prior restraint analysis to a sign ordinance that contained a permitting requirement. The court ultimately concluded that the ordinance, which was amended after the plaintiff filed suit, was not an unconstitutional prior restraint because the amendment deleted the permitting requirement from the ordinance. *Id.* at 351-52. *See also Riel v. City of Bradford*, 485 F.3d 736, 755-56 (3d Cir. 2007) (applying prior restraint analysis to sign ordinance but finding that it did not grant unbridled discretion to the architecture review board); *Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007) (applying prior restraint analysis to an ordinance prohibiting signs in the historic district without prior approval and concluding that although the architectural approval criteria were subjective in nature, they were sufficiently tied to objective standards to limit application of the criteria to architecture and design issues without regulating the content of signs); *Café Erotica of Florida, Inc. v. S. Johns County*, 360 F.3d 1274, 1284 (11th Cir. 2004) (holding a sign ordinance invalid as an unconstitutional prior restraint because "the discretion it grant[ed] to the County Administrator extend[ed] beyond permissible boundaries).

In this case, CBS contends that §§ 13.08.A (whether the request "preserves the health, safety, and welfare of the public, and is in harmony with the general purpose and intent of this ordinance"); 13.08.E (whether the request "may have a substantial and permanent adverse effect on neighboring property"); 13.08.G (whether the request "is generally aesthetically compatible with its surroundings"); 15.02.A (the proposed use must "[b]e designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance, with the existing or intended character of the general vicinity"); and 15.04.I.6 ("The construction or maintenance of a billboard may not act as a detriment to adjoining property, act as an undue distraction to traffic on nearby streets, or detract from the aesthetics of the surrounding area."), must be struck down because they lack objective standards to circumscribe the unfettered discretion they allow.

The foregoing provisions of the Zoning Ordinance are similar to zoning provisions struck down in several cases from the Eastern District of Michigan cited by CBS. *See Int'l Outdoor, Inc. v. City of Romulus*, No. 07-15125, 2008 WL 4792645, at *9 (E.D. Mich. Oct. 29, 2008); *Lamar Adver. Co. v. City of Wixom*, No. 2002-60166 (E.D. Mich. Jan. 31, 2003); *Macdonald Adver. Co. v. City of Pontiac*, 916 F. Supp. 644, 649-50 (E.D. Mich.1995).[2] The provisions at issue in *Lamar Advertising* required the zoning board to determine the billboard's "compatibility with adjacent uses of land, compatibility with the surrounding natural environment, and appropriate capacity of public services and facilities affected by the billboard's land use." In *International Outdoor*, the zoning ordinance required that the proposed use "be in harmony with the appropriate and orderly development of the surrounding neighborhood," "shall relate harmoniously with the physical and economic aspects of adjacent land uses," and be "so designed, located, planned and to be operated that the public health, safety and welfare will be protected." As was true in those cases, the provisions of the Zoning Ordinance at issue here convey broad discretion on the Planning Commission without any objective limits as a check against denial based solely upon the content of the speech of the applicant. Although some cases may present a close question as to whether particular standards sufficiently cabin an official's discretion to ameliorate First Amendment concerns, the provisions at issue in the instant case are not narrowly drawn and are bereft of any standards that are even arguably objective.[3] Such provisions are unconstitutional. *See Forsyth*

---

[2] CBS attached copies of both the *International Outdoor* and *Lamar Advertising* opinions as Exhibits A and B to its brief in support of its motion for summary judgment.

[3] Common examples of objective standards that easily survive First Amended challenges are limitations on size, height, location, area, and setback conditions. *See H.D.V.-Greektown, LLC*, 568 F.3d at 623. In *B & B Coastal Enterprises, Inc. v. Demers*, 276 F. Supp. 2d 155 (D.Me. 2003), the court found that the following requirements sufficiently limited the official's discretion: "whether the proposed sign is within the maximum number of signs permitted for each zoning district; whether it meets the square footage, height, and setback requirements; and, provided it is one of the allowed types of signs, it is not located on the roof of a building; and whether it meets the restrictions on illuminated signs." *Id.* at 169. In *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006), the Ninth Circuit held that provisions requiring officials to compare the elements of the proposed sign with those of surrounding

*County*, 505 U.S. at 130, 112 S Ct. at 2401 (a licensing scheme "may not delegate overly broad licensing discretion to a government official").

The City does not dispute that the cited provisions lack objective standards and grant unfettered discretion to the Planning Commission to deny special use applications. In addition, the City acknowledges that courts routinely apply prior restraint scrutiny to zoning ordinances containing permitting or licensing requirements. The City argues, however, that the Zoning Ordinance should not be subjected to a prior restraint analysis because the Zoning Ordinance is not concerned with the regulation of speech but instead is a valid exercise of the City's police powers to regulate land use. This argument fails because, as the cases discussed above recognize, an ordinance which is primarily concerned with regulating land usage may nonetheless infringe First Amendment rights where approval is subject to the discretion of the issuing official. On this point, the Supreme Court has observed: "Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government's regulatory interests with the individual's right to expression." *Metromedia, Inc.*, 453 U.S. at 502, 101 S. Ct. at 2890. The City fails to cite any authority to the contrary.

The City further argues that none of the dangers of censorship are present here because the Zoning Ordinance does not create the potential for censorship by the City. More specifically, it points out that approval is given solely based upon the physical characteristics of the billboard and neither the identity of the speaker nor the content of the message is known, thus precluding any possibility that the content of the speech plays a part in the decision. The cases make clear,

---

signs and structures sufficiently limited the governing body's discretion. *Id.* at 1083-84. The court explained that "[o]fficials are to look only to the proposed sign's relationship 'with other nearby signs, other elements of street and site furniture and with adjacent structures.'" *Id.* at 1083. Other objective criteria were "'form, proportion, scale, color, materials, surface treatment, overall sign size and the size and style of lettering.'" *Id.*

however, that actual censorship is not required. Rather, it is the mere "existence of the licensor's unfettered discretion, coupled with the power of prior restraint, [that] intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood*, 486 U.S. at 757, 108 S. Ct. at 2144. *See also Café Erotica*, 360 F.3d at 1284 (concluding that the fact that the sign applicant does not disclose its message is irrelevant to whether the ordinance creates the potential for content-based decisionmaking).

Finally, the City suggests that CBS's interest in free speech is diminished by the fact that CBS does not seek to convey its own message but rather is concerned only with profiting from the speech of others. The City further notes that the speech from which CBS profits is commercial speech, which receives less protection than core First Amendment speech. To the extent the City suggests that CBS lacks standing to assert a facial challenge to the Zoning Ordinance simply because it has only commercial interests in speech as opposed to being the speaker, this argument fails in light of *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S. Ct 2882 (1981), in which the Supreme Court held that an outdoor advertising company with "commercial interests" could assert a facial challenge to a sign ordinance on behalf of others. *Id.* at 505 n.11, 101 S. Ct. 2891 n.11. The advertiser alleged that enforcement of the ordinance would have harmed its business by eliminating outdoor advertising in San Diego. *Id.* at 503-04, 101 S. Ct. at 2890. This was a sufficient interest to confer standing and is similar to CBS's interest in this case. Moreover, while the City is correct that commercial speech enjoys less protection than core First Amendment speech, this status does not preclude a facial challenge by CBS. *Café Erotica*, 360 F.3d at 1281 ("Further, the fact that Café Erotica and We Dare to Bare primarily engage in commercial advertising does not prevent us from considering their facial challenges.").

Although the Court has concluded that §§ 13.08.A, 13.08.E, 13.08.G, 15.02.A, and 15.04.I.6 are unconstitutional, it is not clear from the record whether CBS is entitled to further relief at this juncture. In addition, the Court notes that the Zoning Ordinance contains a severability clause in § 22.08, which provides: "Should any section, clause or provision of this ordinance be declared by the courts to be invalid, the same shall not affect the validity of this ordinance as a whole or any part other than the part declared to be invalid." This provision suggests that only the sections set forth above should be invalidated, but the parties have not specifically addressed this issue. Therefore, the Court will order the parties to submit supplemental briefing on severability and the relief, if any, to which CBS may be entitled as a result of the Court's rulings.

## IV. Conclusion

For the foregoing reasons, the Court will deny CBS's motion for summary judgment with regard to Count II but grant the motion with regard to Count III. In addition, the Court will grant in part and deny in part the City's motion with regard to Count II and deny its motion with regard to Count III.

An Order consistent with this Opinion will be entered.

Dated: October 6, 2010                     /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE